Fred Kenneth THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 267–85.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 19, 1986.

Henry Wade, Dist. Atty. and Michael A. Klein, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted by a jury of the offense of driving while intoxicated. V.A.C.S., Art. 6701*l*–1 (1977).[1] Punishment was assessed at 15 days confinement in jail and a $500 fine. The Fifth Court of Appeals, in an unpublished opinion, affirmed appellant's conviction. *Thomas v. State*, No. 05–84–00010–CR (Tex.App.— Dallas 1/18/85). We granted appellant's petition for discretionary review to decide two questions: 1) whether the admission of appellant's refusal to submit to a breath test violated *state* law,[2] and 2) whether the jury should have been given an instruction on a fact issue involving appellant's refusal to provide a breath sample. We will affirm.

On June 11, 1982, appellant was arrested by Officers Holcomb and Freeze for suspicion of driving while intoxicated on the North Central Expressway in Dallas. After Officer Holcomb placed appellant in his squad car, appellant was informed of his *Miranda* rights.[3] After taking appellant to the city jail, Officer Holcomb then asked appellant to provide a breath sample for chemical analysis of its alcohol concentration, warning him of the consequences of a

Charles W. Tessmer, Dallas, for appellant.

---

1. The offense of driving while intoxicated has since been redefined. See V.A.C.S., Art. 6701*l*–1 (Supp.1986); *Forte v. State*, 707 S.W.2d 89, 93–94 (Tex.Cr.App.1986).

2. In his petition for discretionary review, appellant argues that evidence of his refusal to provide a breath sample should have been excluded for several reasons: 1) it violated Art. 38.22, V.A.C.C.P. and V.A.C.S., Art. 6701*l*–5 (1977), 2) it violated his privilege against self-incrimination under Art. I, § 10, Tex. Const. and Art. 1.05, V.A.C.C.P., and 3) it violated his right to counsel under Art. I, § 10, Tex. Const. and Arts. 1.05 & 38.22, V.A.C.C.P.

While these arguments all involve state law, they present at least three different legal theories in a single ground of review. In the instant case, appellant's arguments are sufficiently clear for this Court to address. However, by combining more than one legal theory in a single ground, an appellant risks rejection on the ground that nothing is presented for review. *Brooks v. State*, 642 S.W.2d 791, 793 (Tex.Cr. App.1982).

(All emphasis is supplied throughout by the author of this opinion unless otherwise indicated.)

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

refusal.[4] Appellant refused to submit to the test. Officer Holcomb filed his report of the arrest and presented appellant to the jail guards for booking.

On the first day of his trial, appellant filed a motion in limine that sought to keep the State from introducing any evidence surrounding his refusal to provide a breath sample. See Appendix A, *post,* at p. 708. Appellant also filed a memorandum in support of the motion that focused the trial court's attention upon the self-incrimination clause of Article I, § 10, of the Texas Constitution. See Appendix B, *post,* at pp. 709–710. The motion was denied the same day. See *id.,* at p. 709.

Appellant also filed a pre-trial motion, entitled "Trial Objection No. One," that sought to suppress evidence of his refusal to provide a breath sample. See Appendix C, *post,* at pp. 710–712. The motion also sought to provide a shorthand method for objecting, during trial, to admission of evidence of appellant's refusal to give a breath sample. In pertinent part, the motion stated:

> The [appellant], by reference to this Trial Objection No. One, objects to the testimony of the police officers as to whether they offered or the [appellant] refused a breath test which is inadmissible under Art. I, § 10 of the Texas Constitution and Art. 1.05, Tex.Code Crim. Proc.Ann.
>
> WHEREFORE, PREMISES CONSIDERED, the [appellant] prays that this Trial Objection No. One be granted and that he be allowed to object to the introduction of such testimony by reference to this Trial Objection No. One rather

than stating each individual ground alleged herein.

Appellant's motion was denied the same day it was filed. See *id.,* at p. 711.

During trial, the State asked Officer Holcomb, on direct examination, to tell the jury which rights appellant was advised of prior to being asked to provide a breath sample. The following colloquy ensued:

> MR. TESSMER [Appellant's counsel]: Your Honor, at this time I *again* renew my trial objection number one that I would call to Your Honor's attention in the interest of time.
>
> THE COURT: Overrule the objection. Note your exception. Go ahead.

Officer Holcomb listed the warnings that he gave to appellant. See n. 4, *ante,* at p. 698. He then testified that he asked appellant to provide a breath sample. Before Officer Holcomb testified as to appellant's reply, appellant's attorney objected:

> MR. TESSMER: Your Honor, I *again* renew trial objection number one on each and every objection therein and may I have a continuing objection along this line of evidence, Your Honor?
>
> THE COURT: All right. Well, I'll sustain the objection to the exact words that were used, but I'll give you—overrule the objection to the nature of the response in general.
>
> *I'll give you the same objection to everything related to this matter.*

Officer Holcomb, without repeating the exact words used by appellant, testified that appellant refused to take the breath test. On cross-examination, appellant's at-

---

**4.** At the time of appellant's arrest, Texas law was silent as to whether a police officer was required to inform a suspect of the consequences of a refusal. V.A.C.S., Art. 6501*l*–5 (1977). Nevertheless, Officer Holcomb stated to appellant:

> You're under arrest for the offense of driving while intoxicated. I hereby request that you submit to a chemical breath test to determine the alcoholic content of your blood. If you refuse to take this test, your driver's license and driver's privileges can be suspended. In addition to the breath test, you can have a physician, a qualified technician, a chemist or

qualified nurse of your own choosing to administer a test or tests within a reasonable time, no more than two hours after your arrest. ... Will you take the test?

We note that Officer Holcomb's warnings did not include information that evidence of appellant's refusal might be used against him at his trial. Texas law has since been amended to require a police officer to inform a suspect of the particular consequences of a refusal to provide a breath sample, including use of the refusal against him at his trial. V.A.C.S., Art. 6701*l* –5, § 2(b) (Supp.1986).

torney asked Officer Holcomb if appellant said, when refusing the breath test, "Not without my lawyer being present." Officer Holcomb agreed that appellant had made the statement.

On redirect examination, the State asked Officer Holcomb if appellant made any other statement relating to his refusal to take a breath test. Appellant's attorney objected:

MR. TESSMER: Now, Your Honor, unless he establishes the exact time, unless it is explained in a prior statement, we would object to it as not being res gestae and not being pertinent to the questioning concerning refusal of the test when he's asking for his lawyer to be present.

The trial court sustained appellant's objection. However, later in the trial, on further redirect examination, the State again asked Officer Holcomb whether appellant made any other statements when refusing to take the breath test. Appellant did not object, and Officer Holcomb testified: "He [appellant] said that in—in eight hours when his lawyer got there, he'd be sober as the Judge anyway."

Appellant later testified to the circumstances surrounding his arrest. However, he did not testify as to what statements he made in response to Officer Holcomb's request for a breath sample.

Prior to submission of the charge to the jury, appellant requested that the jury be given the following instruction: "That the Jury is to completely disregard any evidence in this record from police officer or officers concerning the refusal to take a [breath] test." In requesting the charge, appellant made the following objection:

MR. TESSMER: Defendant bases this objection on Article I, Section 10 of the Texas Constitution and Article 105 (sic) of the Texas Code of Criminal Procedure.

The Defendant further objects in that the evidence in this case does not establish the refusal on the part of the De-

fendant to take the test but only a request that his counsel be present.

The Defendant further says that although this objection would not be good if the Defendant asserted Federal Constitutional grounds only to the aforementioned violation of his *Fifth Amendment rights* to allowing proof of refusal to take the test, that Defendant relies wholly and totally upon the Texas Constitution and Code of Criminal Procedure heretofore dictated.

### I.

In his first ground of review, appellant argues that admission into evidence of his refusal to provide a breath sample violated state law. As we noted earlier, this ground of review presents several separate legal theories. See n. 2, *ante*, at p. 697. We will address separately each of appellant's claims under his first ground of review, and in doing so we examine the holding of the Court of Appeals.

The Court of Appeals overruled these various claims in a single sentence by citing *Gresset v. State,* 669 S.W.2d 748 (Tex. App.—Dallas 1983, pet. granted). *Thomas,* supra, at 2. In *Gresset,* supra, a defendant challenged the admission at trial of his refusal to provide a breath sample on the basis of the Fifth Amendment privilege against self-incrimination and Article 38.22, § 3, V.A.C.C.P. The Court of Appeals held that Article 38.22, supra, the Fifth Amendment and Article I, § 10, supra, all provide comparable protection against self-incrimination and do not prevent admission of a defendant's refusal to provide a breath sample.

### A.

Appellant argues that the admission of evidence of his refusal to provide a breath sample violated Article 38.22, supra,[5] citing *Dudley v. State,* 548 S.W.2d 706 (Tex.Cr. App.1977). In *Dudley,* two members of this Court relied, in part, on Article 38.22, supra, to prohibit the introduction of evi-

---

5. Article 38.22, supra, establishes procedural requirements that control the admissibility of

statements resulting from custodial interrogation.

dence that a defendant had been offered and had refused to take a breath test. *Id.,* at 708 (Phillips, J.); *id.,* at 709–11 (Onion, P.J., concurring).[6]

The Court of Appeals summarily rejected appellant's claim by citing *Gresset,* supra. *Thomas,* supra, at 2. However, we need not decide whether *Gresset,* supra, was properly decided on the issue of Article 38.22, supra, because no asserted error was preserved for review.

■ Generally, to preserve asserted error for review on appeal, a defendant must object in a timely and specific manner at trial. *Granviel v. State,* 552 S.W.2d 107, 121 (Tex.Cr.App.1976), cert. denied 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Hinkle v. State,* 442 S.W.2d 728, 732–33 (Tex.Cr.App.1969). In addition, if an objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review. *Hodge v. State,* 631 S.W.2d 754, 757 (Tex.Cr.App. 1982); *Williams v. State,* 549 S.W.2d 183, 187 (Tex.Cr.App.1977).

In the instant case, appellant did not object at trial on the basis of Article 38.22, supra. Nothing is preserved for review, and we express no opinion as to the merit of appellant's claim.

### B.

Appellant, again citing *Dudley,* supra, argues that evidence of his refusal to provide a breath sample was inadmissible because Article 6701*l*–5, supra, did not explicitly provide that such evidence was admissible at his trial.[7] In *Dudley,* one member of this Court suggested that a suspect's refusal to provide a breath sample could not be admissible absent "a definitive legislative provision to that effect." *Id.,* at 714 (Onion, P.J., concurring).

The Court of Appeals summarily rejected appellant's claim by citing *Gresset,* supra. *Thomas,* supra, at 2. However, again we need not decide whether *Gresset,* supra, controls the instant claim because no error was preserved for review.

At no time during the trial did appellant object on the basis of Article 6701*l*–5, supra. Nothing is preserved for review, and we express no opinion as to the merit of appellant's claim.

### C.

Appellant argues that admission of evidence of his refusal to provide a breath sample violated his privilege against self-incrimination under the state constitution and its statutory equivalent. Our state constitution provides: "In all criminal prosecutions the accused ... shall not be compelled to give evidence against himself...." Art. I, § 10, supra. Article 1.05, supra, contains identical language.

The State argues that appellant, in both the form and substance of his trial objection, failed to preserve any asserted error for review. We disagree.

■ We recently restated the purposes of an objection:

first, a specific objection is required to inform the trial judge of the basis of the objection and afford him or her an opportunity to rule on it; and second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony. [citation omitted]

*Maynard v. State,* 685 S.W.2d 60, 64–65 (Tex.Cr.App.1985). Thus, to the extent that an appellate record adequately shows that the trial judge and opposing counsel were aware of the substance of a defendant's objection, thereby meeting the purpose of an objection, an objection preserves

---

**6.** Neither judge relied solely upon Article 38.22, supra, in their opinions. See *id.,* at 708 (Phillips, J.); *id.,* at 711–15 (Onion, P.J., concurring).

**7.** At the time of appellant's arrest and trial, Article 6701*l*–5, supra, was silent as to whether the State could introduce evidence of a defendant's refusal to provide a breath sample. Effec-

tive January 1, 1984, Article 6701*l*–5, supra, has been amended to include a specific provision providing that a suspect's refusal to provide a breath or blood sample "may be introduced into evidence at the person's trial." V.A.C.S., Art. 6701*l*–5, § 3(g) (Supp.1986).

the complaint for appellate review.[8] *Id.* See *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr.App.1977) ("Thus, where the correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection."). See also *Hill v. State,* 641 S.W.2d 543 (Tex.Cr.App.1982).

During trial, immediately prior to introduction of any testimony relating to appellant's refusal to provide a breath sample, appellant referred the trial court to his "Trial Objection No. One." This pre-trial "objection" was directed at the very evidence appellant sought to exclude and obviously relied upon a particular section of the state constitution: namely, the Self-Incrimination Clause.[9] See Appendix C, *post,* at pp. 710–712. The trial court immediately overruled appellant's objection. Moments later, appellant made an identical objection and also requested a continuing objection. The trial court partially sustained appellant's objection and stated: "I'll give you the same objection to everything related to this matter."

Although appellant's objection came in the form of an objection by reference, the trial court accepted the objection in that form and overruled it. The trial court's acceptance of the form of appellant's objection was made even clearer when it granted appellant a continuing objection on the same grounds. Cf. *Kemp v. State,* 171 Tex.Cr.R. 612, 352 S.W.2d 281 (1961).

Moreover, having granted appellant a continuing objection, after appellant twice referred to "Trial Objection No. One," the trial court obviously was aware of the substance of that pre-trial objection. Therefore, we find that the asserted State constitutional error was preserved as to appellant's privilege against self-incrimination under Article I, § 10, supra.[10]

Appellant urges this Court to read the state privilege against self-incrimination in Article I, § 10, Tex. Const., as preventing admission of evidence of his refusal to provide a breath sample. In so arguing, appellant acknowledges the absence of any similar protection under the Fifth Amendment.[11] See *South Dakota v. Neville,* 459

---

**8.** We note that a specific objection made at a hearing outside of the jury's presence would also be sufficient to preserve the asserted error for appellate review without the need for objecting again in the presence of the jury. *Maynard,* supra, at 65. This principle would seemingly respond to the State's argument, as to the form of appellant's objection, because appellant filed a pre-trial motion to suppress. However, the record only indicates that the motion was denied on the same day that the trial began. See Appendix C, *post,* at p. 711. It does not indicate whether a hearing on the motion was held outside the jury's presence or whether the trial judge denied the motion prior to introduction of evidence of appellant's refusal. Cf. *Maynard,* supra, at 65. Although such a sequence of events may indeed have occurred, "[t]his Court is bound by the record on appeal as presented to us." *Evans v. State,* 622 S.W.2d 866 (Tex.Cr. App.1981). Therefore, we must rely upon separate reasoning to find that appellant preserved his asserted error for appellate review.

**9.** The pre-trial "objection" did not specifically mention the Self-Incrimination Clause of Article I, § 10, supra. It merely cited Article I, § 10, supra. However, given the context within which appellant made his objection and his earlier motion in limine and memorandum specifically mentioning the Self-Incrimination Clause,

see Appendices A & B, *post,* at pp. 708–709, the trial judge's and opposing counsel's attention had certainly been directed at that clause. We acknowledge, of course, that the motion in limine, alone, did not preserve any asserted error. *Maynard,* supra, at 64.

**10.** Appellant, through cross-examination of Officer Holcomb, did elicit testimony that he declined to provide a breath sample without the presence of an attorney. However, such testimony did not cure any error because it was offered to rebut the State's claim that appellant actually refused to provide a breath sample. See *Maynard,* supra, at 65 ("... [T]he harmful effect of improperly admitted evidence is not cured by the fact that the defendant sought to meet, destroy, or explain it by the introduction of rebutting evidence").

Appellant also allowed the State without explicit objection, on redirect examination of Officer Holcomb, to elicit testimony that appellant said he would be sober before an attorney arrived. However, the trial court had given appellant a continuing objection to such testimony on the basis of Article I, § 10, supra.

**11.** "[N]or shall [any person] be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V.

U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (use of refusal against defendant at his trial does not violate Fifth Amendment privilege against self-incrimination). See also *McCambridge v. State,* 712 S.W.2d 499, 504 (Tex.Cr.App.1986). Appellant argues that the privilege against self-incrimination, under our state constitution, provides broader protection than the federal counterpart in the Fifth Amendment. In particular, in his brief, appellant argues that "[t]he distinction between our state and federal provisions ... lies in the terminology that an accused shall not be compelled 'to give evidence against himself' contained in Art. I, § 10 of the Texas Constitution ... as opposed to being 'a witness against himself' contained in the Fifth Amendment to the federal counterpart." For this proposition, appellant relies upon *Dudley,* supra, and *Cardwell v. State,* 156 Tex.Cr.R. 457, 243 S.W.2d 702 (1951).[12]

The Court of Appeals rejected appellant's claim under Article I, § 10, supra, by citing *Gresset,* supra. While the defendant in *Gresset* did not raise a claim under Article I, § 10, supra, the Court of Appeals commented that the self-incrimination clause "of the Texas Constitution that is similar to the Fifth Amendment has been held to be no broader in scope than the federal right." *Gresset,* supra, at 750, citing *Olson v. State,* 484 S.W.2d 756, 762 (Tex.Cr.App. 1969) (Opinion on Rehearing). We must now examine the continuing viability of the principle announced in *Olson,* supra, and its application to the instant case.

█ In interpreting the meaning of the privilege against self-incrimination under our state constitution, we have made it clear that, while Supreme Court opinions on the privilege are given some weight, final determination of the scope of the privilege must come from this Court. *Sanchez v. State,* 707 S.W.2d 575, 580 (Tex.Cr.App. 1986). In recent years, this Court has had three opportunities to examine the differ-

ences and similarities between the privilege against self-incrimination under Article I, § 10 of the Texas Constitution and the Fifth Amendment of the U.S. Constitution. *Sanchez,* supra; *Ex parte Shorthouse,* 640 S.W.2d 924 (Tex.Cr.App.1982); *Olson,* supra. In two of these cases, Article I, § 10, supra, was found to be comparable in scope to the Fifth Amendment. Cf. *Shorthouse,* supra (grant of use immunity sufficient to compel testimony of witness over claim of privilege under Article I, § 10, supra), with *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (grant of use immunity sufficient to compel testimony of witness over claim of privilege under Fifth Amendment); cf. *Olson,* supra (compelling handwriting exemplar from defendant does not violate privilege under Article I, § 10, supra), with *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (compelling handwriting exemplar from defendant does not violate privilege under Fifth Amendment). In the third case, Article I, § 10, supra, was found to be more protective than the Fifth Amendment. Cf. *Sanchez,* supra (use of defendant's post-arrest, pre-*Miranda* silence to impeach violates privilege under Article I, § 10, supra), with *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (use of defendant's post-arrest, pre-*Miranda* silence to impeach does *not* violate the Fifth Amendment). These cases indicate that, while Article I, § 10, supra, may sometimes be comparable in scope to the Fifth Amendment, an independent examination of the history, policy, and precedent surrounding relevant state law is necessary before such a conclusion can be reached. See, e.g., *State v. Jewett,* 146 Vt. 221, 500 A.2d 233 (1985).

Appellant's argument regarding the differences in language between Article I, § 10, supra, and the Fifth Amendment was addressed in *Olson,* supra. After examining the history of Article I, § 10, supra, we concluded:

---

**12.** Neither case is applicable to the instant case because neither case was decided on the basis of the Self-Incrimination Clause of Article I, § 10, supra. *Dudley,* supra, only involved the Self-Incrimination Clause of the Fifth Amendment. *Cardwell,* supra, only involved state confession statutes.

... [W]e have found no historical evidence for [defendant's] position that the framers of our state constitution meant, by choice of language, for Article I, § 10, to be more encompassing than, "witness against himself," as used in the federal constitution or other formulations of the privilege then in existence in other states.

*Id.*, at 762. After also reviewing the policy and precedents surrounding Article I, § 10, we "adopt[ed] the view that the Texas constitutional self-incrimination privilege extends its protection to *testimonial compulsion.*" *Id.*, at 772. This holding overruled the prior view that Article I, § 10, *supra*, prevented police from forcefully collecting physical evidence from a defendant.[13] Therefore, we reject appellant's claim that Article I, § 10, *supra*, provides broader protection than the Fifth Amendment *because of differences in language.*

Alternatively, appellant argues that a defendant's refusal to take a breath test is testimonial in nature, thus violating Article I, § 10, *supra*.[14] However, Article I, § 10, *supra*, only protects a defendant from providing evidence that is both testimonial *and* compelled. Because we will hold that appellant's refusal was not compelled, we need not decide whether it was testimonial in nature.

This Court has never addressed the question whether Article 6701*l*–5, *supra*, compels a defendant to refuse a breath sample in violation of Article I, § 10, *supra*. However, the Supreme Court, in addressing a similar state statute, has held that the Fifth Amendment is not violated by use of evidence of a defendant's refusal to take a

chemical test for alcohol concentration because "no impermissible coercion is involved when [a] suspect refuses to submit to take [a] [blood-alcohol] test, regardless of the form of refusal...." *South Dakota v. Neville,* 459 U.S., at 562, 103 S.Ct., at 921–22.[15] See *McCambridge, supra,* at 504. See also *State v. Neville,* 346 N.W.2d 425, 430 (S.D.1984) (defendant's refusal not compelled in violation of state constitutional privilege against self-incrimination). However, before *South Dakota v. Neville, supra,* or *State v. Neville, supra,* can serve as persuasive authority in rejecting a similar claim under our state constitution, we must make an independent examination of the meaning of "compulsion" in Article I, § 10, *supra*.

Occasionally, a state constitutional provision may provide broader protections despite language identical or similar to a federal constitutional provision. See, e.g., *Sanchez, supra* (right to silence under state constitution provides broader protection than federal constitution); *State v. Neville, supra* (failure to warn defendant that refusal might be admissible at his trial *does* violate *state* due process requirements, even though it *does not* violate *federal* due process requirements).

Historical evidence of the adoption of the Self-Incrimination Clause in Article I, § 10, *supra*, is silent as to whether any distinction was intended between compulsion under the state constitution versus compulsion under the federal constitution. See generally *Olson, supra,* at 761. In addition, we can discern no countervailing policy considerations for developing a broader

---

**13.** Specifically overruled were *Apodaca v. State,* 140 Tex.Cr.R. 593, 146 S.W.2d 381 (Tex.Cr.App. 1941) (collection of urine specimen over defendant's objection violates Article I, 10, *supra*), *Beachem v. State,* 144 Tex.Cr.R. 272, 162 S.W.2d 706 (Tex.Cr.App.1942) (demand for voice exemplar violates Article I, § 10, *supra*), and *Trammel v. State,* 162 Tex.Cr.R. 543, 287 S.W.2d 487 (Tex. Cr.App.1956) (collection of blood sample without consent of defendant violates Article I, § 10, *supra*).

**14.** A minority of states have found refusal to take a breath test to be testimonial communica-

tion. See *South Dakota v. Neville,* 459 U.S., at 560–62, 103 S.Ct., at 921; *Dudley, supra,* at 708. But see and cf. *State v. Hoenschied,* 374 N.W.2d 128, 129–30 (S.D.1985) (refusal to perform sobriety tests is "non-communicative and non-testimonial in nature").

**15.** This holding necessarily overruled *Dudley, supra,* to the extent that *Dudley* held that a defendant's choice of refusal to provide a breath sample was *compelled* in violation of the Fifth Amendment.

meaning of compulsion under our state constitution than is present in the federal constitution. We also can not find any distinction created by our early cases.[16] See *Millican v. State*, 143 Tex.Cr.R. 115, 157 S.W.2d 357 (1942); *Beachum*, supra; *Apodoca*, supra.

For example, in *Millican*, supra, a defendant claimed that police officers compelled him to say and do things while in jail that violated his privilege against self-incrimination under Article I, § 10, supra.[17] This Court, inter alia, found that the police officer "did not *force* him to do anything." *Id.*, 157 S.W.2d at 358. Rejecting the defendant's claim that he was *"ordered"* from his jail cell for observation by the officers, the Court found that the defendant *voluntarily responded to a request* made by police officers. *Id.* On rehearing, the Court held that no violation of the privilege against self-incrimination was present "if [defendant] performed any act *of his own volition* while thus being observed." *Id.*, at 359. See *Apodoca*, supra, 146 S.W.2d at 382, quoting 16 Corpus Juris 566 ("Compulsion is the keynote of the prohibition [against self-incrimination]; and to render evidence inadmissible on the ground that defendant was compelled to produce it against himself, it must appear that such compulsion was used as to rob him of *volition* in the matter.")

■ The Supreme Court has repeatedly held that "the Fifth Amendment is limited to prohibiting the use of 'physical or moral [mental] compulsion' exerted on the person asserting the privilege." *Fisher v. United States*, 425 U.S. 391, 397, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39, 47 (1976) and cases cited therein. Physical compulsion includes such obvious force as physical torture or

extended deprivation of food and water. See *United States v. Carignan*, 342 U.S. 36, 41, 72 S.Ct. 97, 100, 96 L.Ed. 48 (1951). Mental compulsion includes the more subtle force associated with offering a defendant two choices, one of which results in a penalty, punishment or detriment from which the defendant is entitled to be free. See *South Dakota v. Neville*, 459 U.S., at 563, 103 S.Ct., at 922; *State v. Neville*, supra, at 429. Notably, both physical and mental compulsion remove the element of *voluntariness* from a defendant's decision to incriminate himself.

We find that both the state and federal privileges against self-incrimination are aimed at preventing *involuntary* testimonial incrimination. Thus, we find that the meaning of compulsion in the Article I, § 10, supra, is comparable in scope to the meaning of compulsion in the Fifth Amendment. Realizing this, we find the reasoning of *South Dakota v. Neville*, supra, and *State v. Neville*, supra, to be persuasive.

In *South Dakota v. Neville*, the Supreme Court held that "the values behind the Fifth Amendment are not hindered when the State offers a suspect the choice of submitting to the blood-alcohol test or having his refusal used against him." The Court found that the defendant had not been physically compelled to refuse. As to the presence of mental compulsion to refuse, the Court noted that "the State could legitimately compel the suspect, against his will, to accede to the test." 459 U.S. at 563, 103 S.Ct. at 922. Therefore, the Court reasoned, the State could instead present a suspect with the choice of providing a blood sample or having his refusal used against him. *Id.* In other words, the suspect, not being constitutionally protected from compulsion to provide *physical evidence* of his

---

**16.** Our reliance upon early case law is necessary because of the relative absence of cases raising Article I, § 10, supra, after the Fifth Amendment was made applicable to the states in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Where this Court addresses claims based on state law, we are now careful to note when we rely upon cases that only interpret state law. See *McCambridge*, supra, at 501–502, n. 9.

**17.** The defendant in *Millican*, supra, relied upon *Apodaca*, supra, for the principle that a suspect may not be required to provide incriminating physical evidence. *Apodaca*, supra, has been overruled because such evidence is not testimonial in nature. *Olson*, supra, at 772. However, *Millican*, supra, and *Apodaca*, supra, are still instructive as to the meaning of compulsion in Article I, § 10, supra. The same limitation applies to *Beachum*, supra.

intoxication, could be persuaded to provide a sample through the physically less intrusive threat of a penalty.[18]

█ In the instant case, appellant was offered a choice between providing a breath sample or refusing. Providing the breath sample would' have risked production of potentially damaging physical evidence of intoxication. Appellant's refusal to provide a breath sample risked suspension of his driver's license and use of evidence of the refusal against him at his trial. Nothing in the record indicates that appellant was physically coerced into choosing the option of refusal. Nor does anything in the record indicate that he was mentally coerced into choosing the option of refusal.[19]

The State could have legitimately relieved appellant of the relative benefit of making such a choice by compelling him to provide physical evidence of intoxication. See *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Olson,* supra; *Rodriguez v. State,* 631 S.W.2d 515, 517 (Tex.Cr.App.1982). Instead, the State attempted to influence appellant into providing such evidence with the threat of a penalty for refusing. By refusing, appellant avoided what might have been compelled; but, in doing so, he accepted those consequences that the State could legitimately apply. Such difficult options do *not necessarily create compulsion for a particular choice.* Therefore, we find that appellant was not compelled to incriminate himself under Article I, § 10, supra, when

he chose to refuse to provide a breath sample.

### D.

Appellant argues that admission of evidence of his refusal to provide a breath sample violated his right to counsel under Article I, § 10, Tex. Const. and Article 1.05, V.A.C.C.P. Article I, § 10, supra, in pertinent part, provides: "In all criminal prosecutions the accused ... shall have the right of being heard by himself, or counsel, or both ..." Article 1.05, supra, contains identical language.

The State argues that appellant's trial objection, in substance, has not preserved any error for review. We need not decide whether appellant's right to counsel under Article I, § 10, supra, was violated because we agree with the State.

By referring to "Trial Objection No. One," appellant directed the trial court's attention to his pre-trial motion, which contained a specific citation to Article I, § 10, supra. As we found earlier, the form of objection, while not ideally suited to preserving asserted error, was accepted by the trial court in the instant case and, therefore, satisfies the requirement that an objection be made during trial. See discussion, *ante,* at p. 701.

█ The substance of the objection, however, falls short of informing the trial court that appellant sought to exclude evidence of his refusal on the basis that he had been denied his right to counsel. Article I, § 10, supra, in its entirety, provides:

---

**18.** For similar reasoning applied to a state constitutional privilege against self-incrimination, see *State v. Neville,* supra, at 429–30. Cf. *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) (witness could not be compelled to *testimonially* incriminate himself with threat of penalty).

**19.** We acknowledge that appellant was not informed that his refusal to provide a breath sample might be used against him at his trial. However, the absence of this warning does not necessarily mean the State "compelled" appellant to select refusal as his option. The State would normally favor encouraging a defendant to provide a breath sample because it results in far stronger evidence of intoxication. In the ab-

sence of any evidence that the State "has subtly coerced [appellant] into choosing the option it had no right to compel," *South Dakota v. Neville,* supra, we find that the failure to warn appellant concerning the use of his refusal at his trial did not compel appellant to refuse to provide a breath sample. See *State v. Neville,* supra, at 430.

Appellant has not raised any claim that the failure to warn him of a consequence of his refusal violated the due course of law clause under our state constitution, Article I, § 19, Tex. Const. Cf. *State v. Neville,* supra. Therefore, we express no opinion as to the merit of such a claim.

In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and a copy thereof. He shall not be compelled to give evidence against himself. He shall have the right of being heard by himself, or counsel, or both; shall be confronted with the witnesses against him, and shall have compulsory process for obtaining witnesses in his favor. No person shall be held to answer for a felony unless on indictment of a grand jury.

In his "Trial Objection No. One," appellant merely cited Article I, § 10, supra. We have concluded that such a citation, given the obvious relevance of the Self-Incrimination Clause in the context of the surrounding testimony and pre-trial motions, sufficiently directed the trial judge's attention to the *Self-Incrimination Clause* of Article I, § 10, supra. See n. 9, *ante,* at p. 701. However, there is nothing in the record to suggest to the trial judge or opposing counsel that appellant was also raising the *Right to Counsel Clause* of Article I, § 10, supra.

Appellant had not mentioned any concerns related to his right to counsel in his motion in limine or his pre-trial motion. See Appendices A, B & C, *post,* at pp. 708–712. Nor does the context of surrounding testimony and pre-trial motions suggest that appellant was raising a right to counsel claim.[20] In fact, the initial testimony by Officer Holcomb of appellant's refusal specifically avoided any reference to appellant's request for counsel. Therefore, we find that appellant has not preserved any asserted error under the Right to Counsel Clause of Article I, § 10, supra.

#### E.

Appellant argues that admission of evidence of his refusal to provide a breath sample violated his right to counsel under Articles 38.22, V.A.C.C.P. Article 38.22, supra, establishes procedural requirements, including informing a defendant of his right to counsel, that control the admissibility of statements resulting from custodial interrogation.

The State argues that appellant never specifically objected on the basis of Article 38.22, supra, thus preserving nothing for review. The Court of Appeals summarily rejected appellant's claim by citing *Gresset,* supra. We need not decide whether *Gresset* controls the instant claim because appellant did not preserve any error for review.

No objection appears in the record raising Article 38.22, supra, as a basis for excluding evidence of appellant's refusal to provide a breath sample. Therefore, nothing is preserved for review.

#### II.

In his second ground of review, appellant contends that the trial court erroneously refused to instruct the jury on a fact issue relating to his request for counsel being interpreted as a refusal to provide a breath sample. Appellant apparently relies upon Article 38.23, V.A.C.C.P.[21]

---

20. We note that in objecting to the charge, appellant explained that he was aware of the lack of protection under the Fifth Amendment and, therefore, sought protection under state law. See facts, *ante,* at pp. 698–699. The Fifth Amendment is commonly used as a shorthand method of raising the Self-Incrimination Clause. While appellant's explanation in connection to his request for an instruction does not restrict his trial objection, it reinforces our belief that appellant did not intend to raise the Right to Counsel Clause during trial.

21. Appellant, in his petition and brief, never specifically mentions Article 38.23, supra. However, he cites two cases decided by this

Court that directly rely upon Article 38.23, supra: *Hall v. State,* 649 S.W.2d 627 (Tex.Cr.App. 1983) and *Jordan v. State,* 562 S.W.2d 472 (Tex. Cr.App.1978).

Article 38.23, V.A.C.C.P., provides:

No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any criminal case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a rea-

The State argues that appellant did not object on the basis of Article 38.23, supra, at trial, thus failing to preserve any asserted error for review. The Court of Appeals held that the general charge to the jury sufficiently protected appellant's right to a resolution of factual dispute surrounding evidence of his refusal to provide a breath sample.[22] We will affirm on different grounds.

Normally, the failure to object at trial preserves nothing for review. See discussion, *ante*, at p. 700. However, where jury charge error is first raised on appeal, this Court will consider the complaint, albeit under a more exacting harm analysis if error is found. See *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App.1985) (Opinion on Rehearing) ("... [I]f no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.' ") Cf. *Kelly v. State*, 669 S.W.2d 720 (Tex.Cr.App.1984) (failure to include Art. 38.23 instruction is not fundamental error in absence of objection). Therefore, whether appellant properly preserved any asserted jury charge error will only be relevant should we find that error actually occurred. Because we find that no error occurred, we need not decide whether appellant preserved any asserted jury charge error.

Article 38.23, supra, in mandatory terms, provides that a jury is to be instructed to resolve factual disputes over whether evidence was illegally obtained and, therefore, inadmissible. *Jordan*, supra. An instruction under Article 38.23, supra, therefore, directs a jury to disregard evidence if it resolves, in a defendant's favor, the factual dispute concerning the manner in which the evidence was obtained.

■ In the instant case, appellant requested an instruction which would have ordered the jury to disregard any evidence of his refusal to provide a breath sample. See *ante*, at p. 699. Such an instruction essentially would have removed the fact question from the jury's consideration. As such, appellant's requested instruction did not follow Article 38.23, supra, and, in fact, would have constituted a comment on the weight of the evidence. Art. 36.14, V.A.C.C.P. However, we still must determine whether the trial court should have submitted a properly worded Article 38.23 instruction.

■ A trial court is required to include a properly worded Article 38.23 instruction in the jury charge only if there is a factual dispute as to how the evidence was obtained. *Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Cr.App.1982); *Morr v. State*, 631 S.W.2d 517, 518 (Tex.Cr.App.1982); *Turpin v. State*, 606 S.W.2d 907 (Tex.Cr.App.1980); *Jordan*, supra.; *Merriweather v. State*, 501 S.W.2d 887, 891 (Tex.Cr.App.1973). In the instant case, there is no dispute as to the facts surrounding appellant's refusal to provide a breath sample. Appellant responded to Officer Holcomb's request for a breath sample by stating, "Not without my lawyer." Appellant also stated that he would be sober before arrival of his lawyer. Although appellant testified, he never controverted these facts. Thus, no instruction was required.

The judgments of the Court of Appeals and the trial court are affirmed.

MILLER, J., dissents.

---

sonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

**22.** The Court of Appeals, citing *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), also commented that "no right to counsel under the sixth amendment to the United States Constitution *or Article I, sec. 10 of the*

*Texas Constitution* was raised at the stage of the proceeding where appellant was requested to take the breathalyzer test." *Thomas*, supra. Because we will affirm on statutory grounds, we express no opinion at this time whether a right to counsel under Article I, § 10, supra, attaches prior to a defendant being formally charged. Cf. *Forte*, supra (no right to counsel under Sixth Amendment prior to formal charges).

## APPENDIX A

NO: MA-82-55806-J

| THE STATE OF TEXAS | X | IN THE COUNTY CRIMINAL |
| | | |
| v. | X | COURT NO. EIGHT |
| | | |
| FRED KENNEDY THOMAS | X | DALLAS COUNTY, T E X A S |

EARL BULLOCK County Clerk

OCT 3 1983

County Criminal Court No. 8
By _____ County, Texas
_____ Deputy

### MOTION IN LIMINE - III

TO THE HONORABLE JUDGE OF THE COURT:

Now comes FRED KENNEDY THOMAS, the defendant in the above styled and numbered cause, by and through his attorney of record, and respectfully requests the court to instruct the prosecution to refrain from mentioning, referring to, alluding to, questioning or examining any witness called by the State or the defense with reference to whether or not the police officers offered, or the defendant refused, a breath test, or make reference to the administrative hearing for the suspension of the defendant's driver's license, in the presence of the jury, until a hearing has been held outside the presence of the jury to determine the admissibility of such testimony and to determine whether the testimony is relevant to any issue being tried in this cause, and whether the prejudicial effect of the evidence will outweigh the probative value, if any.

WHEREFORE, the defendant prays for the requested relief.

Respectfully submitted,

_Charles Tessmer_

Charles Tessmer #19809000
One Elm Place, Suite 2300
1015 Elm St.
Dallas, Texas 75202

ATTORNEY FOR DEFENDANT

## Certificate of Service

 This is to certify that a copy of the above and foregoing Motion in Limine - III has been furnished to Assistant District Attorney, Dallas County Courthouse, Dallas, Texas, 75202, by United States mail, postage prepaid, or by hand delivery on this _____ day of _____, 1983.

 Charles Tessmer #19809000

 ·ATTORNEY FOR DEFENDANT

## O R D E R

 On this _3_ day of ___Oct___, 1983, the defendant's Motion in Limine - III was presented to me, and the same is in all things (GRANTED) (DENIED, to which action of the court the defendant excepts). *efqul ez xe learys decl*

 J U D G E

## APPENDIX B

 NO: MA-82-55806-J

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE COUNTY CRIMINAL |
| v. | X | COURT NO. EIGHT |
| FRED KENNEDY THOMAS | X | DALLAS COUNTY, TEXAS |

EARL BU....... County CLERK

OCT 3 1983

Cou..., C....... Cou i Na. 8
Dallas County, Texas
By_____Deputy

### MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE

TO THE HONORABLE JUDGE OF THE COURT:

 Now comes FRED KENNEDY THOMAS, the defendant in the above styled and numbered cause, and in support of his Motion in Limine - III, would show the Court as follows:

 I.

 Defendant would show the Court that the testimony of the police officers as to whether they offered or the defendant refused a breath test is inadmissible under Art. 1, §10 of the Texas Constitution and Art. 1.05, Tex. Code Crim. Proc. Ann.

## II.

It is error to admit evidence which is inadmissible on the basis of Texas Constitution, Art. 1, §9 which deals with searches and seizures, and more specifically self-incrimination under Art. 1, §10 of the Texas Constitution, even though it might not be error on federal constitutional grounds only. Where evidence is inadmissible on State constitutional grounds, but said objection is made only on the federal constitution, no error is presented. See, Gressett v. State, 723 S.W.2d 695 (#05-82-00493-CR, Tex.App.-Dallas 1983; now on Petition for Discretionary Review, #806-83 in the Texas Court of Criminal Appeals), wherein the court, in an unpublished opinion, held that DWI breath test "refusals" were admissible under the Fifth Amendment, but it is noted that appellant did not raise the inadmissibility of refusal under the Texas Constitution. See also, White v. State, 521 S.W.2d 255 (Tex.Cr.App. 1975), cert.gtd., Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), on remand, 543 S.W.2d 366, 369 (Tex.Cr.App. 1976), where the defendant's sole reliance in the trial court was on U.S. Const., amend IV and he at no time urged that Art. 1, §9 of the Texas Constitution supported his motion to suppress illegally obtained evidence. And in Bell v. State, 582 S.W.2d 800, 807 (Tex.Cr.App. 1979)(En Banc), the testimony of a laboratory technician as to the blood type of the defendant, who was required to give a blood sample out of the jury's presence during the course of his capital murder trial, was properly admitted over defendant's objection, which was grounded primarily on U.S. Const., amend V.

Respectfully submitted,

_Charles Tessmer_

Charles Tessmer #19809000
One Elm Place, Suite 2300
1015 Elm St.
Dallas, Texas 75202

ATTORNEY FOR DEFENDANT

## APPENDIX C

NO: MA-82-55806-J

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE COUNTY CRIMINAL |
| | | EARL BULLOCK, COUNTY CLERK |
| v. | X | COURT NO. EIGHT 1983 |
| FRED KENNEDY THOMAS | X | DALLAS COUNTY, TEXAS |

FILED

County Criminal Court No. 8
Dallas County, Texas

By_____ Deputy

### TRIAL OBJECTION NO. ONE

TO THE HONORABLE JUDGE OF THE COURT:

Now comes FRED KENNEDY THOMAS, the defendant in the above styled and numbered cause, by and through his attorney of record, and before the introduction of any testimony in the above cause before the jury, advises the Court of the contents of this trial objection in order that an objection may be offered in the presence of the jury each time with reference to the grounds set out in this objection by reference to this objection as Trial Objection No. One without stating in detail each individual ground herein.

The defendant, by reference to this Trial Objection No. One, objects to the testimony of the police officers as to whether they offered or the defendant refused a breath test which is inadmissible under Art. 1, §10 of the Texas Constitution and Art. 1.05, Tex. Code Crim. Proc. Ann. ①

WHEREFORE, PREMISES CONSIDERED, the defendant prays that this Trial Objection No. One be granted and that he be allowed to object

*① Defendant also objects to proof of refusal of a breath test i.e. the INTOXILYZER because the statute refers specifically to a BREATH test that uses chemicals and the INTOXILYZER uses no CHEMICALS.*

to the introduction of such testimony by reference to this Trial Objection No. One rather than stating each individual ground alleged herein.

Respectfully submitted,

Charles Tessmer #19809000
One Elm Place, Suite 2300
1015 Elm St.
Dallas, Texas 75202

ATTORNEY FOR DEFENDANT

### Certificate of Service

This is to certify that a copy of the above and foregoing Trial Objection No. One has been furnished to Assistant District Attorney, Dallas County Courthouse, Dallas, Texas, 75202, by hand delivery, on this 3rd day of *October*, 1983.

Charles W. Tessmer #19809000

ATTORNEY FOR DEFENDANT

O R D E R

On this __3__ day of __Oct__ , 1983, the defendant's Trial Objection No. One was presented to me and the same is in all things (~~GRANTED~~) (DENIED, to which action of the court the defendant excepts).

_____
J U D G E

---

CLINTON, Judge, dissenting.

I.

In rejecting appellant's claim that the trial court erred in admitting evidence of his refusal to submit to a breath test the majority refuses to entertain arguments advancing Article 38.22, V.A.C.C.P. and V.A.C.S., Article 6701*l*–5 (prior to amendment in Acts 1983, 68th Leg., p. 1577, ch. 303, § 4, eff. Jan. 1, 1984) as independent authorities in support of his position, finding that these authorities were not expressly made the basis of appellant's objections in the trial court. With all due deference, I submit that it is not the proper function of this Court to make such determinations for the first time on petition for discretionary review.

In one ground of error in his brief to the court of appeals appellant argued: "The exclusion of evidence of the appellant's refusal is not only founded upon Article I, § 10 of the Texas Constitution which prohibits compulsory self-incrimination, but also the statutory provisions of Article 1.05 [V.A.C.C.P.]." The court of appeals dispatched this ground as follows: "Appellant contends that admission of [refusal] evidence violated Article I, section 10 of the Texas Constitution, and Texas Code of Criminal Procedure Ann. article 1.05. We overrule this ground of error on the authority of *Gressett v. State*, 669 S.W.2d 748, 749–50 (Tex.App.—Dallas 1983, pet. granted)."

Thus the court of appeals directly decided only the question of admissibility of refusal evidence as a function of the state constitutional provision (and corresponding provision of the Code of Criminal Procedure) and did not expressly pass on the other authorities argued under appellant's first ground of error. Undecided was appellant's argument that Article 38.22 would exclude evidence of refusal to submit to a chemical breath test.[1] Wholly ignored was appellant's argument that because Article 6701*l*–5 itself was silent as to admissibility before the 1983 amendment, the Legislature must have intended refusal evidence to be excluded. See *Dudley v. State*, 548 S.W.2d 706, 712–14 (Tex.Cr.App.1977) (Onion, P.J., Concurring).

If the court of appeals chooses to hold that these particular authorities, because not argued to the trial court, are not cognizable on appeal, that is its prerogative. We should not so hold for the first time on petition for discretionary review, however. I would remand the cause to the court of appeals for its consideration of all authorities raised but not resolved on appeal. Because the Court does not, I dissent.

II.

A major stumbling block in determining admissibility of refusal to submit to a chemical test for intoxication under Article I, § 10, and for that matter under the Fifth Amendment, is deciding how to characterize that refusal for purposes of constitu-

---

**1.** See, however, the opinion in *Bass v. State*, 723 S.W.2d 687 (Tex.Cr.App.1986).

tional analysis. On the one hand it may be argued that such refusal constitutes exercise of the constitutional right to silence while under arrest, which right would be impermissibly penalized if the refusal were admitted in evidence as indicative of the accused's guilty knowledge. It may also be argued that refusal, whether accomplished by spoken words or by failure to speak, constitutes a "compelled communication" that amounts to selfincrimination, and thus its admission constitutes a direct violation of the accused's constitutional right to be free of any compulsion to "give evidence against himself."

### A.

The rule excluding evidence of an accused's silence after arrest stems from his unqualified right under the State Constitution to remain silent in the face of custodial accusation. See *Sanchez v. State,* 707 S.W.2d 575 (Tex.Cr.App.1986) (Clinton, J., concurring). (For the federal analog see *Miranda v. Arizona,* 384 U.S. 436, at 468, n. 37, 86 S.Ct. 1602, at 1624–25, n. 37, 16 L.Ed.2d 694, at 720, n. 37 (1966).) Quite obviously, an accused who remains silent after arrest is exercising his constitutional right to do so. To use the fact of his silence at a subsequent trial to create the inference that because he was silent, he must have had nothing exculpatory to say, and therefore harbored a guilty mind, is to penalize exercise of the right.

An accused has no constitutional right, however, to refuse to submit to a chemical sobriety test. *Rodriguez v. State,* 631 S.W.2d 515 (Tex.Cr.App.1982). It has been argued that when silence is used to manifest refusal to submit to a breath test, the inference drawn is that appellant had no exculpatory physical evidence to give, *not* that he had nothing exculpatory to *say*. It is therefore anomalous to treat refusal, whether express or by silence, as inadmissible on the rationale that we would thereby avoid penalizing exercise of the constitutional right to remain silent. See *People v. Sudduth,* 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401, cert. den. 389 U.S. 850, 88 S.Ct. 43, 19 L.Ed.2d 119, reh. den. 389 U.S. 996, 88 S.Ct. 460, 19 L.Ed.2d 506 (1966). However, because I view refusal to take a breath test, even if by silence, not as an exercise of the right to remain silent, but as an involuntary expression of a consciousness of guilt, I reject this analysis.[2]

---

**2.** Nevertheless, an argument can be made from our caselaw that refusal evidence does indeed impinge upon an accused's Art. I, § 10 right to remain silent.

In his concurring opinion in *Dudley v. State,* 548 S.W.2d 706, at 710 Tex.Cr.App.1977), Judge Onion quoted the holding of *Cardwell v. State,* 156 Tex.Cr.R. 457, 243 S.W.2d 702 (1951), thus:

"The State cannot avail itself of the silence or refusal of an accused prisoner as a circumstance tending to establish his guilt."

As was recently demonstrated, this "rule of evidence which forbids an accused's silence to be used against him as tending to establish guilt[,]" *Dudley v. State,* supra, at 711, is actually a rule of state constitutional dimension. *Sanchez v. State,* supra. Thus, inasmuch as *Cardwell v. State,* supra, applied that rule as authority for excluding evidence of a refusal to submit to a sobriety test, it relied on Article I, § 10.

*Cardwell,* supra, relied, *inter alia,* upon *Sharp v. State,* 153 Tex.Cr.R. 96, 217 S.W.2d 1017 (1949). While *Sharp* seems to rely in part upon the confession statute, it also cites *Gardner v. State,* 34 S.W. 945 (Tex.Cr.App.1896), as do a number of the other cases referenced in *Sharp.* We have already shown that *Gardner v. State,* supra, established that the rule against using postarrest silence against an accused was one of state constitutional dimension, and applied irrespective of the confession statute. See *Sanchez v. State,* supra at 585–86. Inasmuch as *Cardwell* may be said to be an extension of the holding in *Gardner,* it can certainly be argued that the rule excluding evidence of refusal to submit to a sobriety test derived from the state constitutional right to silence. Hence, such evidence would be inadmissible under state law regardless of whether the Fifth Amendment would admit it. Cf. *Weaver v. State,* 43 Tex.Cr.R. 340, 65 S.W. 534 (1901). (The day after the murder occurred for which the defendant stood trial, he was brought to a house where the body of the deceased was laid out.

Having been warned according to the terms of the confession statute, he was asked to step into the house and view the body. This he refused to do, and this fact was allowed into evidence through the testimony of the sheriff, a man named Bell. The Court observed that in *Gardner* and several cases following it:

"... we held that where a person is in custody for a crime his silence cannot be used against him as confession of the truth of the statements made in his presence, whether he was cautioned as required by the statute or not.

### B.

In essence the majority argues, following the lead of *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), that because appellant had the "option" to submit to the extraction of physical evidence, his refusal to submit was not "compelled," and thus did not encroach upon his right under Article I, § 10 to be free from compulsion to "give evidence against himself." The majority observes that "the suspect, not being constitutionally protected from compulsion to provide *physical evidence* of his intoxication, could be persuaded to provide a sample through the physically less intrusive threat of a penalty." At pp. 704–705. From this it is concluded: "by refusing, appellant avoided what might have been compelled; but, in doing so, he accepted those consequences that the State could *legitimately* apply [emphasis supplied]." At p. 705. In this, the majority begs the very question that is in issue here, *viz,* whether admitting evidence of refusal to submit to a chemical breath test *is* indeed a consequence the State can legitimately apply.

As I understand it, the reasoning of the majority goes somewhat as follows: The State may legitimately compel the extraction of physical evidence of intoxication. *Rodriguez v. State,* 631 S.W.2d 515 (Tex. Cr.App.1982). Threat of a penalty for not submitting to such extraction is a legitimate and probably preferable means of compulsion, particularly inasmuch as actual physical coercion, perhaps implicating due process limitations, is thereby avoided. Because the objective itself, *viz,* the compulsion to provide *physical* evidence, is permissible, any penalty devised to effect that compulsion is legitimate, including the threat to introduce refusal to submit in evidence as a fact from which guilty knowl-

edge may be inferred. That the refusal may be characterized as a "communication" does not matter; because there existed the option to submit to what the State *could* constitutionally have compelled (i.e., a detriment from which the accused was *not* entitled to be free), he was *not* compelled to refuse.

There must be boundaries, however, to what "penalties" can be imposed upon an accused as a means of compelling him to submit to the extraction of physical evidence. Certainly if the Legislature were to amend Article 6701*l* –5, supra, to provide that police officers may beat or torture a D.W.I. suspect until he agrees to submit a sample of his breath for chemical analysis, this Court would be of a mind to strike down the amendment as unconstitutional under both state and federal constitutions; likewise if it were provided that all D.W.I. suspects who fail to submit to chemical testing will be deprived of the assistance of counsel at trial. In short, there must be constitutional limitations upon what penalties may be imposed in order to compel even what is assuredly a constitutionally permissible objective.

State sponsored torture and denial of assistance of counsel are constitutional violations on their face, and thus they may not be used to penalize the failure to submit to a chemical breath test. Whether admission into evidence of the refusal to take such a test is a similarly invalid penalty depends upon whether the refusal *itself* constitutes a "compelled communication" under Article I, § 10.

Because in any event the question thus remains whether refusal evidence constitutes a "compelled communication" under Art. I, § 10, the Court should at least eschew the circuitous analysis whereby it

The bill [of exceptions] shows that Bell cautioned appellant that any statement he might make could be used against him, but not for him, as required by the statute. Thereupon he invited appellant to look upon the body of the deceased. This he refused. Can such refusal be used as a circumstance against defendant? Clearly not. If so, then any refusal to answer questions or to comply with any statutory warning could be used as a criminative fact against him. We do not think the

rule authorizing the introduction of appellant's statement while under arrest can be given the latitude shown by this bill of exceptions. If so, then, as stated, the sheriff could be permitted to testify to any character of denial or refusal the defendant might make as a criminative act against him. We do not think this testimony was admissible, and the court erred in permitting the sheriff to testify as indicated."

*Id.,* at 537.)

finds evidence of refusal to be admissible as a "penalty" "that the State could legitimately apply" for failure to submit to physical testing. It would be far more straightforward simply to hold that evidence of failure to take the test is admissible in its own right. This is true, or so the argument goes, because the accused could opt to submit to what *Rodriguez*, supra, effectively held to be a "permissible detriment." Having the option to submit, the accused is not "compelled" to refuse, and thus his *refusal* is not a "compelled" communication under Art. I, § 10.[3]

I cannot agree. The extraction of physical evidence of intoxication is a permissible detriment, *not* because it is *not compulsion*, but rather because what it compels is *not communicative*. For this reason the State may, within due process bounds, physically force him to submit, if not to the extraction of breath (which may present practical problems), at least to extraction of blood for chemical testing. But just because the State relents, granting a suspect the "right," "power," or what have you, to refuse, it does not follow that he has a concomitant "option" to submit. In fact, the initial choice belongs to the State. Its failure to exercise the option physically to *take* breath or blood does not render the suspect's consequent decision whether or not to submit to it a volitional act. Having chosen *not* to remove such evidence by bodily force, the State simply transforms the compulsion to submit into a compulsion either to submit or to suffer the consequences. That the State *could* constitutionally have compelled actual submission does not render the "option" thus presented uncoercive. Indeed, the "option" the majority attributes to the D.W.I. suspect in this context is wholly contrived. Compulsion once removed is nonetheless compulsion.

In my view, then, the refusal to submit to a police officer's request to submit to a chemical breath test is a product of compul-

sion for purposes of Art. I, § 10. Whether admission into evidence of the refusal is unconstitutional thus depends upon whether that refusal may properly be characterized as a "communication." To that inquiry I now turn.

### C.

It can hardly be said that the refusal to submit to a proffered test for intoxication is not an indicia of a consciousness of guilt. Otherwise it would have no relevance to any material issue in a D.W.I. prosecution, and, absent statutory language expressly admitting it, would be subject to exclusion if objected to at trial. By presenting an accused with the "choice" to submit or refuse, the police officer compels either physical evidence, which of course is not "communicative," or the refusal, which, whether express or by silence, nevertheless translates into an expression of a consciousness of guilt.

As pointed out by Judge Roberts in his dissenting opinion in *Dudley v. State*, 548 S.W.2d 706, 715–16 (Tex.Cr.App.1977), it is possible to analogize to evidence of flight or destruction of evidence, which are considered to be circumstantial indicators of a consciousness of guilt, deriving from *conduct* of the accused. However, it seems to me there is a critical defect in this analogy.

A D.W.I. suspect, on the side of the road or at the stationhouse, is in such a position that, one way or another, *upon request*, he *will* supply the State with more evidence than is already apparent from the fact of his erratic driving, slurred speech, unsteady gait, etc. When he refuses the request, he involuntarily, yet unavoidably, provides a circumstance from which consciousness of guilt can be inferred. By contrast, neither flight nor destruction of evidence is conduct directly elicited during the course of a controlled arrest or investigatory detention. The decision to flee or to flush evidence is not responsive to any choice deliberately presented to the ac-

---

**3.** This is simply a reincarnation of the notion that because an accused has no right to refuse to give physical evidence, testimony that he refuses

to do so does not penalize his constitutional right to *remain silent*. See Part IIA, *ante.*

cused. Indeed, unlike flight or destruction of evidence, which are spontaneous reactions, refusal to submit to a test for intoxication *is* "communicative" conduct *because* it is directly responsive to a police officer's request.

Because I view it to be the "compelled communication" of a consciousness of guilt, I would hold that the admission into evidence of appellant's refusal to submit to a breath test violated his constitutional right to be free of the compulsion to "give evidence against himself," under Art. I, § 10 of the Texas Constitution. Because the majority does not so hold, and for reasons stated in Part I of this opinion, *ante,* I respectfully dissent.

TEAGUE, Judge, dissenting.

After this Court granted the petition for discretionary review that was filed on behalf of Fred Kenneth Thomas, hereinafter referred to as the appellant, the main issue that this Court had to resolve was quite simple: Was the appellant's refusal to submit to a breath test admissible against him?[1] However, after carefully reading the majority opinion, and trying to get a handle on this issue as it may be found or discussed in the majority opinion, I find that I have not had so much fun since I was a very young boy trying to catch a greased pig. As many persons will attest, such can be an almost impossible feat. Trying to make heads or tails out of the ungreased majority opinion closely resembles trying to catch a greased pig.

On direct appeal, in an unpublished opinion, the Dallas Court of Appeals rejected the contention of the appellant, that the trial court erred in admitting over objection testimony of a Dallas police officer that he, the appellant, had refused to submit to a breathalyzer test. See *Thomas v. State,* No. 05–84–00010–CR, January 18, 1985. In so holding, the court of appeals relied upon its decision of *Gressett v. State,* 669 S.W.2d

748 (Tex.App.—Dallas 1983) (Petition for discretionary reviewed granted December 21, 1983, still pending), which in turn had relied upon *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), which held that evidence of a defendant's refusal to submit to a blood-alcohol test is admissible at trial. In a very and rather convoluted and equivocal way, the majority opinion reaches this same result. Cf. Note: "A Further Diminution of the Self-Incrimination Privilege," 6 *American Journal of Trial Advocacy* (Spring, 1986), ("The holding of the [Supreme] Court is unequivocal; refusal evidence can now be used against an accused at trial. The reasoning behind the decision is specious, however, because the Court's reasoning is too scant to be convoluted." (485). Also see Note: "Admissibility of Refusal to Submit to Blood Alcohol Test and the Fifth Amendment," 17 *Creighton Law Review* (1983).

We granted the appellant's petition for discretionary review on October 23, 1985, which was after the Supreme Court had decided *South Dakota v. Neville,* supra. However, on May 26, 1982, this Court had previously refused the State's petition for discretionary review in *Casselberry v. State,* 631 S.W.2d 542, in which the El Paso Court of Appeals quickly, decisively, and succinctly held the following:

> The State may not introduce evidence that the accused was offered and refused to take a breathalyzer test after his arrest for driving while intoxicated. *Dudley v. State,* 548 S.W.2d 706 (Tex.Cr.App. 1977); *Hitt v. State,* 548 S.W.2d 732 (Tex.Cr.App.1977). *Casselberry v. State,* 631 S.W.2d 542, 543 (Tex.App.—El Paso 1982).

What's going on here?

On remand from the Supreme Court, see *State v. Neville,* 346 N.W.2d 425 (S.D. 1984), the South Dakota Supreme Court first held that the Supreme Court's decision

---

**1.** At the time when the appellant was arrested and tried for committing the offense of driving while intoxicated, there was no statutory provision that permitted the State to introduce into

evidence testimony going to a defendant's refusal to provide a breath test. See fn. 4 of the majority opinion, page 698.

was not controlling on its decisions decided pursuant to its state constitution, because "We alone determine the extent of protection afforded under our state constitution." The South Dakota Supreme Court held that the trial court's holding that the defendant's refusal to submit to the blood-alcohol test was inadmissible evidence was correct.

In so holding, the South Dakota Supreme Court first pointed out the distinction between the wording of the Fifth Amendment to the Federal Constitution, "No person ... shall be compelled in any criminal case, to be a witness against himself ...," and the provisions of its State constitution, "No person shall be compelled in any criminal case to give evidence against himself ...," which is almost identical to the like provision found in the Texas Constitution, see Art. I, Section 10, Texas Constitution, "... He shall not be compelled to give evidence against himself ...", and, relying upon a Utah Supreme Court case, *Hansen v. Owens*, 619 P.2d 315 (Utah 1980), which had held that "the phrase 'give evidence against himself,' as used in our constitution, was intended to mean something different and broader than the phrase 'to be a witness against himself' as used in the federal constitution," held that the refusal to give a blood test was evidence of a testimonial nature and thus within the protection of the privilege against self-incrimination as guaranteed by the South Dakota Constitution. 346 N.W.2d, at 429.

Also see Judge Clinton's concurring opinion filed in *Sanchez v. State*, 707 S.W.2d 575 (Tex.Cr.App.1986).

The majority opinion, however, holds: "[W]e reject appellant's claim that Article I, Section 10, supra, provides broader protection than the Fifth Amendment *because of differences in language.*" (page 703). But those very distinctions in language are what make the difference.

On this point, as best I can figure out after carefully reading the majority opinion, the majority opinion tells us that all roads lead to this Court's opinion of *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App.1969) (Opinion on Rehearing), which held that

"compelling a handwriting exemplar or sample does not constitute compelling an accused 'to give evidence against himself' in violation of Article I, Section 10 of the Texas Constitution." (772). However, this Court in *Olson v. State*, supra, left itself some running room when it stated the following: "Of course, the history of the privilege does not finally settle its scope or policies and the strength of these underlying policies will largely determine whether future construction will be restrictive or expansive." (762).

Because I find that there is a legal difference between "compelling an accused to give evidence against himself" and "commenting on his failure to give a breath test," I will leave for another day whether *Olson v. State*, supra, should be expressly overruled, although I would at this time expressly overrule the holding that compelling a breath test does not constitute compelling an accused to give evidence against himself in violation of Article I, Section 10, of the Texas Constitution.

The majority opinion also expressly states on page 17 of the Slip Opinion that in Texas, "The State could have legitimately relieved appellant of the relative benefit of making such a choice by compelling him to provide physical evidence of intoxication." Does this mean that it is now permissible for the police to forcibly take ever how much blood they might want from a conscious defendant who has been arrested for driving while intoxicated? Cf. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

The issue that is before this Court can be decided on procedural due course and due process of law grounds.

The usual reason for refusing to take the breath test is both consciousness of guilt and fear of results, see *People v. Sudduth*, 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (1966), cert. denied, 389 U.S. 850, 88 S.Ct. 43, 19 L.Ed.2d 119 (1967), although there are many other independent reasons why a person might refuse to take the test, such as cost, religious scruples, distrust of the technicians, distrust of the results, etc.

See *State v. Chavez*, 96 N.M. 313, 629 P.2d 1242 (N.M.App.1981). The usual reason, see supra, is also the usual reason why the prosecution seeks its admission into evidence because prosecuting attorneys know that it would be the unusual jury that could erase the inference of guilt resulting from a refusal to take the test. Also see Anno: "Admissibility in criminal case of evidence that accused refused to take test of intoxication," 26 *A.L.R.4th* 112 (1983); Anno: "Refusal to submit to breathalyzer or blood alcohol test, 87 *A.L.R.2d* 370 (1960). In sum, admitting such a refusal into evidence amounts to decreasing the State's burden of proof to prove the elements of the crime of driving while intoxicated. Cf. *People v. Duke*, 136 Mich.App. 798, 357 N.W.2d 775 (Mich.App.1984). Refusal to take the test is conduct communicating the defendant's state of mind; it is, in essence, testimony concerning the defendant's belief on the central issue of the case. "For the state to compel a defendant to reveal those thoughts is to require him to testify against himself and thus to violate Article I, Section 12, of the Oregon Constitution" (See Article I, Section 10, of the Texas Constitution, supra). *State v. Green*, 68 Or.App. 518, 684 P.2d 575, 577 (Or.App. 1984).

Presiding Judge Gillette of the Oregon Court of Appeals also pointed out in *State v. Green*, supra, that the flaw in holding that the refusal to perform requested tests is not testimonial lies in the fact that it confuses the issues of whether the fact of refusal is inadmissible with whether it is communicative. "Determining that an action is communicative is only one step in determining whether it is constitutionally protected. So long as they are not compelled, both communicative actions and direct statements are not protected ..." The existence of legal compulsion is thus crucial to whether the evidence is admissible.

The majority opinion also holds that "appellant was not compelled to incriminate himself under Article I, Section 10, supra, when he chose to refuse to provide a breath sample" because he was given a choice. This is pure balderdash.

At the time of the appellant's arrest and trial, although there was a requirement that a driver arrested for driving while intoxicated had to submit to a breath test, there was also the implicit power on the part of the individual to refuse to take it.

While an officer may properly request a driver to take the test, there was no statutory provision in existence at the time that would have permitted him to go further, i.e., there were no conditions placed on his refusal. "Use of the fact that he refused [to take the test] enables the state to obtain communicative evidence to which it would otherwise have no right, as a result of defendant's refusal to provide noncommunicative evidence to which it also has no right. The situation is a true Hobson's choice. Defendant's communication was compelled; evidence of it is inadmissible under Article I, Section 12, of the Oregon Constitution." *State v. Green*, supra, 684 P.2d at 579.

Furthermore, where is the relevancy of the refusal to take the test?

The argument that the refusal is relevant as circumstantial evidence of the accused's belief that the results of the test would have been incriminating merely invites the contrary view that the admission of one's refusal is misleading, taking the jury too far afield because there might be independent reasons—for example, cost, religious scruples, distrust of the technicians, distrust of the results—motivating one's refusal. Cf. *State v. Chavez*, supra.

Lastly, the majority opinion, although acknowledging that "appellant was not informed that his refusal to provide a breath sample might be used against him at his trial," fails to discuss the fact that the South Dakota Supreme Court, see *State v. Neville*, supra, on remand, held that "Since Neville was not fully informed of this consequence (that the test results could be used against him at trial), he did not voluntarily, knowingly and intelligently waive his constitutional protection of due process and prohibition against self-incrimination.

Accordingly, we affirm the trial court's holding that Neville's refusal to submit to the blood-alcohol test is inadmissible." (431). The majority opinion does so because it finds that "Appellant has not raised any claim that the failure to warn him of a consequence of his refusal violated the due course of law clause under our state constitution, Article I, Section 19, Tex. Const." (Page 705) This is only another way that is used to "wire" around the appellant's contention that his refusal was inadmissible evidence.

Believing that at this time I have stated enough to establish why the majority opinion needs to be rewritten, I will close with a simple: I respectfully dissent. Also see the dissenting opinions that I have filed in *McCambridge v. State,* 712 S.W.2d 499 (Tex.Cr.App.1986); *McGinty v. State,* 723 S.W.2d 719 (Tex.Cr.App.1986); and *Bass v. State,* 723 S.W.2d 687 (Tex.Cr.App. 1986).