# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00457-CR

Bernard Malli, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. 3013458, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Bernard Malli guilty of murder and sentenced him to sixty years in prison. *See* Tex. Pen. Code Ann. § 19.02(b)(1) (West 2003). On appeal, Malli argues that the evidence was legally insufficient to substantiate guilt because the State failed to prove intent to cause serious bodily injury or death; that the trial court erred by denying Malli's motion for continuance; and that the jury charge erroneously failed to instruct the jury regarding the law of parties. We will affirm.

# BACKGROUND

On the evening of October 17, 2001, Malli and three others, Carl Whoberry, Whoberry's girlfriend Jackie Wilson, and Michael Barnes, beat and killed Dale Johnson.[1] Johnson, a homeless man, had established a campsite underneath a loading dock on a railroad track near Airport Boulevard and North Lamar in Austin. Other homeless individuals often visited Johnson at his campsite, and occasionally Johnson invited them to spend the night. Malli and Barnes, with whom Johnson sometimes worked, had both been camping at Johnson's site for approximately two months before the evening of Johnson's death. Whoberry and Wilson had been acquaintances of Johnson for a few years and were occasional visitors to the campsite.

During the week preceding the night of Johnson's death, Johnson had earned approximately $300 from employment at Labor Express, a day labor provider. On the night of October 17, Johnson and a friend, Don Baker, returned to Johnson's campsite after work. Shortly after Johnson and Baker arrived at the campsite, Whoberry, Wilson, Barnes, and Malli joined them. The group then spent the evening drinking and talking.

At some point, Johnson and Whoberry became involved in a fight. Wilson, Barnes and Malli joined in the fight. Baker, though suffering from macular degeneration and legally blind, testified that he had sufficient eyesight to witness the beating. According to Baker, the fight evolved into a prolonged and savage beating of Johnson, during which the attackers kicked Johnson in the

---

[1] Wilson had previously dated Johnson.

head and face with steel-toed boots at least five times.[2] Although the beating began as a frenzied attack, as the group tired, they began to take turns beating Johnson, taking drinks of alcohol while they rested.

Baker attempted to break up the fight twice, but each time he intervened the attackers hit him in the face and knocked him down. Baker suffered face and head injuries, and one of the attackers stole the change in Baker's pockets. When Baker realized that his life was in danger, he attempted to flee. However, each time he tried to leave, an attacker pushed him down and beat him. Before he finally succeeded in leaving the site, Baker witnessed Johnson on his hands and knees, begging his attackers to stop hitting him. Malli was taunting Johnson, calling him names and laughing at him while he kicked and punched him. At some point, the attackers also stole Johnson's wallet, which held the money Johnson had earned at Labor Express. Baker was able to walk to a nearby intersection, where he collapsed on a street corner. A witness called EMS, who took Baker to the hospital for treatment. Johnson died at the campsite.

The morning after the incident, Malli arrived at Labor Express with dried blood caked on his hands and clothes. When questioned about the blood, Malli told David Smith, the dispatcher at Labor Express, that it was Johnson's blood and bragged that he had beaten Johnson and made Johnson beg for his life. Smith asked where Johnson was, and Malli told Smith that Johnson was in the hospital being treated for his injuries. Malli bragged to him that after Malli had broken Johnson's nose and jaw, he and the other attackers called an ambulance for Johnson.

---

[2] Baker provided savage details of the fight, including assaultive conduct that was sexual in nature. Details not relevant to our discussion have been omitted.

Malli, Wilson, Whoberry, and Barnes also told other individuals about the attack on Johnson and how they had "stomped" Johnson by kicking him in the head with steel-toed boots. According to Billy Gunn, a friend of the attackers, Malli stated that he and the others had Johnson on the ground and were kicking him in the head. Malli told Gunn that when Baker tried to intervene in the fight, "they started whopping up on him too." During this conversation, Gunn noticed that Malli had blood on his boots and pants.

Almost a week after Johnson's beating, Baker realized that Johnson may have been seriously hurt by Malli and the other attackers and began searching for Johnson. When Baker could not locate Johnson, Baker reported the incident and that Johnson was missing to Austin police.

A few days later, another friend of the group, Jerry Herndon, overheard Malli stating that he had kicked Johnson in the head, hog-tied him, and stole $200 from him. Malli also said that he had left his blood-soaked clothing at a site where Herndon camped. Herndon had seen clothing he did not recognize at the campsite. After the conversation with Malli, Herndon saw the blood-stained clothes and called Crime Stoppers; police retrieved the clothing. During the same period of time, Wilson told Carol Teller, an acquaintance, that Wilson, Whoberry, Barnes, and Malli had "beat the [expletive] out of Dale" and took his money.[3] Teller went to the campsite to search for Johnson, and she found his body. At Teller's request, a friend reported the location of Johnson's body to police.

---

[3] The record is unclear about the precise chronology of these events.

That afternoon, police dispatched Officer Chris Keen to the location of the body. Johnson's body was identified, and homicide detectives determined the identities of those involved in the murder. They secured arrest warrants for Whoberry, Wilson, Barnes, and Malli. Police arrested Whoberry and Wilson in Austin a few days later, and Barnes and Malli were arrested in Louisiana and Georgia, respectively. A grand jury indicted Malli on two counts of capital murder and one count of murder for the beating death of Johnson.

At Malli's trial, Maurice Padilla, a Department of Public Safety DNA serology criminalist, testified about the results of a DNA analysis on blood stains found on Malli's boots and shirt and a comforter found at the campsite. Results showed that the probability that the blood on the three items came from a randomly selected individual other than Johnson was one in 1.69 million. Vladimir Parungo, a Travis County medical examiner, identified five lacerations to the head (caused by blunt force trauma), a broken nose, and hemorrhaging above the skull and in the brain. Parungo testified that the cause of Johnson's death was blunt head injury caused by at least five blunt traumas to the head, consistent with being kicked by steel-toed boots. However, Johnson's skull was not fractured. Malli did not testify, and the jury found him guilty of murder. After hearing evidence that Malli had three prior felony convictions, the jury sentenced him to sixty years in prison. This appeal followed.

**DISCUSSION**

Malli presents three issues on appeal. He argues that the State introduced legally insufficient evidence that he intended to cause death or serious bodily injury to Johnson; that the trial court's denial of his motion for continuance was an abuse of discretion; and that the trial court

5

erroneously failed to instruct the jury regarding the law of parties. We will address each issue in turn.

**Evidence of intent**

In his first issue, Malli argues that the evidence was legally insufficient to support his conviction for murder because the State failed to prove that he intended to cause serious bodily injury or death. *See* Tex. Pen. Code Ann. § 19.02(b). Malli argues that the jury charge required the jury to find that Malli or another, under the law of parties, intended to cause death or serious bodily injury to Johnson. *See* Tex. Pen. Code Ann. § 7.01(b) (West 2003). Malli claims that the absence of evidence regarding the intensity of the kicks to Johnson's body and the fact that Johnson's autopsy revealed that his skull was not fractured constitute legally insufficient evidence that Malli intended to murder Johnson.

When reviewing the evidence for legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004). This standard of review "gives full play to the jury's responsibility fairly to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from the evidence." *Id*. (quoting *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001)).

The court charged the jury to find Malli guilty of murder if the State proved that Malli, "either acting alone or with another or others as a party to the offense . . . intentionally or knowingly cause[d] the death of an individual, namely, Dale Johnson, by choking or kicking or striking him with a boot . . ." A person commits the offense of murder if he intentionally or

6

knowingly causes the death of an individual. Tex. Pen. Code Ann. § 19.02(b)(1). A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id*. § 6.03(a) (West 2003). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b) (West 2003).

Parungo, the Travis County medical examiner, testified that blunt traumas to the head, which could have been caused by kicks from a steel-toed boot, caused a brain hemorrhage and, ultimately, Johnson's death. Baker testified that from a distance of approximately twenty feet, he saw Malli repeatedly punch and kick Johnson in the head and body with his steel-toed boots.[4]

Additionally, Malli admitted that he participated in Johnson's beating. Malli told Smith, Gunn, a fellow Labor Express laborer, Gunn's girlfriend, and Herndon that he had kicked

---

[4] Malli attempted to cast doubt on the reliability of Baker's testimony by pointing out that Baker suffered from macular degeneration, was legally blind, and was intoxicated during the beating. However, determining the credibility of witnesses is a task solely within the province of the jury. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). We will not substitute our determination for that of the jury. *See id*. at 407. Furthermore, Baker had adequate eyesight to make out shapes and faces, as Baker demonstrated at trial by identifying scenes depicted on paintings in the courtroom at the request of prosecutors. In addition, Baker was able to identify Malli in the courtroom at trial. Baker had known Malli and the other attackers for some time before the beating, and Baker had spent the evening of the incident talking with Malli and the other individuals. A reasonable juror could therefore conclude that Baker was sufficiently familiar with Malli to link him to the incident.

Johnson in the head with his steel-toed boots and made him beg for his life. Smith, Gunn, and Gunn's girlfriend all testified that Malli was covered in blood during these conversations. DNA analysis identified to a substantial degree of certainty Johnson's blood on boots found in Malli's backpack and on Malli's clothes. Police found the shirt that Malli told Herndon he had left at Herndon's campsite soaked in Johnson's blood.

Baker testified that the attack on Johnson was savage and prolonged, and a substantial amount of blood was found at the crime scene. The medical examiner concluded that at least five blunt traumas to the head, traumas which steel-toed boots are capable of causing, resulted in Johnson's death. Although the examiner's report indicates that Johnson's skull was not fractured, the same report also indicates that Johnson suffered a brain hemorrhage and five lacerations because of a minimum of five blows to the head by a blunt force.

Therefore, viewing such evidence in a light most favorable to the jury's guilty verdict, we find that a rational juror could have found that Malli intentionally or knowingly caused Johnson's death beyond a reasonable doubt. *Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004). We overrule Malli's first issue.

**Denial of continuance**

In his second issue, Malli contends that the trial court erred by refusing to grant his motion for continuance. *See* Tex. Code Crim. Proc. Ann. art. 29.03 (West 2003). Malli argues that the denial of the motion was improper because Malli's counsel had another jury trial scheduled the week before Malli's trial and was therefore unavailable to investigate and pursue last-minute matters.

8

The granting or denial of a motion for continuance is within the sound discretion of the trial court. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995). Therefore, the trial court's ruling will not be reversed unless the record shows a clear abuse of discretion. *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984). To find an abuse of discretion in refusing to grant a motion for continuance, there must be a showing that counsel's inadequate preparation time prejudiced the appellant. *See Heiselbetz*, 906 S.W.2d at 511.

Although Malli contends that the trial court's denial of his motion for continuance rendered his counsel unable to prepare an adequate defense, he has not explained how counsel was unprepared for trial and neither argues nor establishes any prejudice to his cause arising from the trial court's failure to continue the trial. Because there is no evidence of prejudice, we hold that the trial court did not abuse its discretion. *See id*. We overrule Malli's second issue.

**Jury instruction**

In his third issue, Malli contends that the jury charge erroneously failed to instruct the jury regarding the law of parties. Malli concedes that the description of the law of parties given in the charge is correct, but he argues that the wording of each of the application paragraphs of the charge is ambiguous and possibly allowed the jury to convict if they found Malli to have acted with one other person, even though the actions of that person were not required to conform to the law of parties.

Because Malli's counsel failed to object to the charge during discussions with the court prior to jury summation, we will only reverse the judgment if the charge was incorrect and resulted in egregious harm. *Pickens v. State*, Nos. PD-1437-04, PD-1454-04, 2005 Tex. Crim. App.

9

LEXIS 959, at *14-15 (Tex. Crim. App. June 22, 2005) (citing *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986)).[5]  Upon inspection of the application paragraphs of the jury's instruction, we find that, although the wording of the instruction may not be as grammatically clear as possible, such wording did not constitute error.  Furthermore, Malli does not argue fundamental error or egregious harm resulting from the instruction and fails to indicate how the jury charge resulted in such harm as to render his trial unfair and impartial.  *See Thomas*, 723 S.W.2d at 707. We overrule Malli's third issue.

## CONCLUSION

Having overruled all of Malli's issues, we affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:  July 28, 2005

Do Not Publish

_____

[5] Under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985), an unobjected-to jury charge error warrants reversal only when the error results in fundamental error and egregious harm; the question of whether the defendant has preserved jury-charge error is relevant only if there is a determination that error actually occurred.